Lansing, Ch. J.
The decision of this cause depends on the single point, whether the wife of Riley is a credible witness, within the intent of the statute concerning wills. On the question whether a credible witness means a competent witness, since the statute, and whether his credibility or competency shall relate to the time of attestation, or to the time of his examination, much learning and inge- [*164] nuity have been formerly displayed. The arguments of Lord Mansfield and Lord Camden, both deservedly celebrated for their legal discernment, have so fully developed the principles which bear upon this point, as to leave only *202 the alternative of adopting one or the other of their opinions on .their own reasoning, if the question cannot be determined on authority. '
The 6th, 7th and 8th sections of our.statutes are transcripts from the 25 Geo. II. chap. 6j sect 1, 2, 3, 4, 5, and 6, '
The 6th section provides, “ that if any person hath attested the. execution of any will or codicil, after the first day of March, 1753, or shall attest the examination Of any will, or codicil thereafter to be. made, to whom any beneficial devise, legacy, estate, interest, gift or appointment of, or affecting any real or personal estate,-(other than for payment of debts,) shall be thereby given,, such devise, legacy,, estate, interest, gift or appointment, shall, so far only as concerns such person attesting the execution of such will, or any person claiming under him, be utterly null and void, and such person shall be admitted as a witness to the execution of such Will or codicil.”
The 7th section directs that creditors may be witnesses in eases where' real estate is charged by the will with the payment of debts, and that any person having attested the execm tion of a will or codicil, on or before the 1st day of March, 1753, to whom- any legacy or bequest is thereby given., whether charged upon lands,, tenements, or hereditaments or not, who has been paid, accepted or released, of refused to accept such legacy or bequest upon tender, shall - be admitted as a witness to prove the execution of such will or codicil, and if he died in the. testator’s lifetime, or before he received; released, or refused On tender, he shall be a legal witness. •
In reviewing these different provisions,, it is obvious that the English statute which we have literally adopted in our revised laws, did not originally lay down an uniform [*165] rule by which to test the cases which had ^arisen before and subsequent to the period mentioned in the statute. This variance was evidently dictated by motives of expediency. It evinced a disposition in the legislature by positive provision, to remove doubts which existed as to the true construction of the statute Of 29 Car. II. c. 3, but to adapt these provisions- as nearly as possible to the situation in *203 which the subject had been placed by the collision of judicial opinions.
This is to be traced from the different and discordant remedies ; for in all cases which occurred before the I st of March, 1753, an extinguishment of the legacy .constituted the legatee a credible witness, but in cases which occurred after that day, the absolute and unconditional-avoidance of the devise or legacy, placed him in the .same situation as to credibility; thus, in the one case permitting the legatee to avail himself of the bequest, and -imposing it on the party who was interested to procure his testimony, to provide for its satisfaction ; in the other, -creating an -insurmountable obstacle to its enuring to his benefit, by completely disqualifying him from taking under it.
From these provisions, no satisfactory inference can be drawn of the sense of the British parliament, as to what was the law before the passing of the statute. This may, in some measure, be accounted for from the nature of the subject. The requiring of witnesses with certain qualifications, was novel in the English law. To guard effectually against fraud, by removing the semblance of temptation to commit it, was a desirable object. The doet-rine-of the common law, that the credibility of the witness must be determined at the time of his production, from his then actual situation, might expose him to be practised upon. These .considerations dictated the expediency of applying a radical cure to the evil. But the remedy lias as little analogy to the one as to the other opinion, which.seems to have-obtained before the statute, the one holding that a release, «fee. would make the witness competent, and restore his credibility if he was a devisee; the other merely including the legatee as a witness,
*and leaving him to seek satisfaction from the per [*166] sonal assets of the testator, by the aid of the testimony of other witnesses, which his own incompetency would preclude him from effecting. The statute, however, avoided .both devise and legacy.
In the case of Hilliard v. Jennings, (Ld. Raynt. 5.05; *204 Carth. 514;) it was held, that a devisee was not a credible witness within the purview of the statute.
In the case of Holdfast ex dem. Anstey v. Dowsing, (2 Stra. 1253,) John Hailes was one of the witnesses to the will of James Thompson, by which an annuity of 20/. per annum, charged on the real and personal estate of the testator, was given to Elizabeth-, the wife, of John Hailes, for her life, and to her separate use; and to Hailes and his wife each a legacy “of 10/. Twenty pounds was tendered to Hailes, for the legacies to him and his wife, which he refused to accept Chief Justice Lee, -and the other judges ■of the K. B. ruled, that Hailes was not a credible witness within the intent of the statute of frauds.
From the case of Brince v. Lloyd, (1 Vesey, 503,) it appears that the case of Anstey v. Dowsing, was brought into the exchequer chamber, where there was a difference of •opinion among the judges, but the parties having compromised, .it was not determined.
After -the stat. of 25 Geo. II. was passed, ¡the first case ■found in the books was determined in the court of K. B. 28 Geo. II. It was the case of Wyndham v. Chetwynd, (1 Burr. 414,) on the will of Walter Chetwynd, dated the 14th •day of May, 1750, and consequently prior to the statute of 25 Geo. II. This will contained a devise subjecting the testator’s real estate to the payment of his debts, and three of ■his creditors were witnesses to its execution,
The clause in that statute respecting creditors who were witnesses, has fully established their credit; for the statute as far as it relates to‘creditors, has a'retrospective effect, and was evidently intended as declaratory. This renders the ground the-court of C. B. took on that «occasion, an [*167] ¡unaccountable ^circumstance; for instead of deciding the case on the positive provisions of the statute, Ld. .Mansfield resorts to a train of reasoning; as if that statute did not exist, and discusses the doctrine of the competency and credibility of the witnesses in a very clear and elaborate argument. His ¡argument, however, throughout, is intended as a vindication of .the point, that .an interested *205 witness at the time of attestation may, by being divested of his interest at the time of his examination, become credible.
The case of Doe ex dem. Hindson v. Kersey,(a) arose, on a will of John Knott, which took effect before the statute of Geo. II. By the will an estate was' devised to trustees for the use of the poor of the town of Maulsmeaburn. Two of the witnesses were trustees, and all were seised of land in fee simple in the township. The two trustees had, before the trial, released all their interest under the will, to their co-trustees, and had divested themselves of their estates. It was held by Clive, J., Bathurst, J. and Gould, J. against Pratt, Ch. J. that the release and divesting themselves of their interest, had made ,them competent witnesses.
From this it appears, that both in theK. B. and C. P, in England, the same doctrine has been supported by the last adjudications on the point, to wit, that the credibility of the witness is to be tested from his situation at the time of examination, and not at the time of his attestation.(b) These opinions have been acquiesced in'; they govern as authority; they had the force of authority before our revolution, and I think as far as they apply to the present case, they ought to be conclusive.
*206 In the .present case the evidence of the interest of the .witness, which is only consequential, cannot operate >to affect .the interest ..of the devisee* her husband. It is, therefore, .not •a -ease within the statute, and she has not even .an .interest of any kind at present Her husband’s estate which he took as devisee, expired with his life; and it does not .[168] *appear that he has any interest in the pecuniary legacy. She Is, -therefore, in .my -opinion, .a .credible witness within the intent of .the statute.
I cannot discover that the unity of person in legal -construction, attributed to 'the husband .and wife, brings ..this case within the purview -of that part of the statute which avoids the. legacy; for I think that the statute which is intended to derogate from a common -right, is not to be .extended by construction, beyond the precise, objection described in it. The husband and wife, -with respect to legacies, .are considered as distinct, each possessing the power of acquiring property in that mode ;' and if she is a legatee, and her husband does not obtain satisfaction of the legacy in his lifetime, it survives to her. Several other cases might be put -to show that the legal existence, of the wife, is not so completely merged in that of her husband, as the generality -of. the doctrine respecting it seems to import. Upon the whole, I am of opinion that judgment should be rendered foivthe defendant.
Lewis, J. concurred.
Benson, J.
I agree to the .result -of .the opinion delivered by the Chief Justice, but for different reasons. My opinion is founded solely on the ground that the unity of husband and wife,In legal contemplation, is such, that if either be a witness to a will containing a devise or legacy to the other, such devise or legacy is void within-the intent of the statute. This is a simple rule dictated by common sense. The reason of the provision contained in the statute, applies equally to the present case, and I think it ought to .receive a liberal construction in support of a -will. I consider, therefore, both the devise-and legacy to Riley as void; that his wife is thus *207 a competent witness, and that the will, as to the other dispositions in it, was duly executed.(a)
Kent, J. and Radcliff, J. were of the same opinion.
Judgment for the defendant-

а) Decided in Easter Term, 1765, and published separately in 1766, in 4to. It is printed in a note, in 1 Day’s Cases in Error, Connecticut, p. 41-88.

 But see per Ld. Camden in Doe d. Hindson v. Kersey, 4 Burns Ec. Law, 27. 1 Day, 46, et seq. Lee, Ch. J. in Holdfast v. Dowsing, Str. 1254. See also Brograve v.Winder, 2 Ves. jr. 636. The opinion that if the witness was incompetent at the time of the attestation, nothing, ex post facto, could restore the validity of his attestation, appears to be confirmed by the case oí Hatfield v. Thorpe, 5 Barn. & Aid. 589, cited infra, 168, n. (a), in which, though the wife had died before the determination of the previous.life estate, whereby her husband’s interest under the devise became extinct; it was held, that' the will was not duly attested. See Lovelass on Wills, 301. In Hawes v. Humphrey, 9 Pick 350, the court held that the witnesses to the will must have been competent at the time of attestation. The. revised statutes of Massachusetts, ch. 62, §:'6., confirm this decision. If the witnesses aré competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will if it’be otherwise satisfactorily proved. See Allen v. Allen, 2 Overton’s R. .172. 1. Jarm. on Wills, .Berk., ed-63—65.

 In Hatfield v. Thorpe, 5 Barn. & Aid. 589 the statute 25 Geo. 2, e; 6,. was held not to extend to the case where the attesting witness is the husband of a devisee, who takes an estate in fee in remainder, after a life estate, under the will: such an attesting witness not being made competent, by the statute, to prove the will. In South Carolina it has been held, by Chancellors Matthews and Rutledge, that a bequest to the wife was valid within the stat. 25 Geo. 2; and yet the husband competent, Woodberry v. Collins, 1 Desau. 424. This agrees with the reasoning of Lansing, Ch. J. in-the principal case. But in Woodberry v. Collins, the competency of the husband seems to be referrible rather to the remote and contingent character of the interest to which he-became entitled. And, it has been Held, that one deriving a remote and contingent interest, by a devise, as a possible relief from taxation, is not incom*petent. Hawes v. Humphrey, 9 Pick. 350, 356. Cornwell v. Isham, 1 Conn. R. 35. See also Nason v. Thatcher, 7 Mass. R. 398. Cowen & Hill’s Notes, 1344.